## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

NIESHA ANTHONY, individually
and as parent and next friends of
ZARIAH ANTHONY, a minor,

     **Plaintiffs,**

v.

O'FALLON TOWNSHIP HIGH
SCHOOL DISTRICT 203 BOARD OF
EDUCATION, TWANA DOLLISON,
RICHARD BICKEL, AND DR.
DARCY BENWAY,

     **Defendants.**

Case No. 3:23-CV-00967-SPM

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion to Dismiss (Doc. 32) filed by Defendants O'Fallon Township High School ("OTHS") District 203 Board of Education, Twana Dollison, Richard Bickel, and Dr. Darcy Benway (collectively the "OTHS Defendants"). Having been fully informed of the issues presented, this Court **GRANTS in part and DENIES in part** the O'Fallon Defendants' Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff Niesha Anthony's First Amended Complaint (Doc. 26), which the Court views as true for purposes of this Motion. Anthony's minor daughter Zariah Anthony was enrolled at OTHS during the 2021–

22 (Ninth Grade) and 2022–23 (Tenth Grade) school years.[1] (*See* Doc. 26, pp. 1–2; Doc. 32, pp. 1–2). On May 12, 2022 (at the end of the 2021–22 school year), Anthony alleges that OTHS Vice Principal Dollison, in a meeting with Zariah and other students "to discuss the bullying of ZARIAH's friend by other students," said "[a]ll the dark-skinned people are causing all of the problems lately." (Doc. 26, ¶¶ 22, 24). This "caused a substantial detrimental effect on ZARIAH's mental health and, having been made by a school official in a position of trust and authority, substantially interfered with ZARIAH's ability to participate in or benefit from the services, activities and/or privileges provided by OTHS." (*Id.*, ¶¶ 24, 29).

Once Zariah informed her mother of this incident, Anthony contacted OTHS Principal Rich Bickel the same day. (*Id.*, ¶ 31). Anthony alleges that, instead of conducting an investigation, Bickel contacted Dollison and told her about the phone call from Niesha. (*Id.*, ¶ 37). Anthony alleges that Dollison then called her directly and that Anthony terminated the phone call because she was "[s]tunned that Principal Bickel had so flagrantly violated OTHS Board of Education Policy by informing Vice-Principal Dollison of her racial complaint of harassment rather than conducting an investigation." (*Id.*, ¶ 39). Anthony then called OTHS Superintendent Dr. Darcy Benway that same day. (*Id.*). Dr. Benway allegedly "informed Niesha Anthony that Vice-Principal Dollison could not have made a racist, harassing statement to ZARIAH or the other OTHS students in attendance at the May 12, 2022,

---

[1] It should be noted that the high school is bifurcated into a campus for freshman (Milburn) and a campus for upperclassmen (Smiley). *See About OTHS*, O'FALLON TWP. HIGH SCH., https://www.oths.us/district-info/about-oths [https://perma.cc/9SQV-JF24] (last visited Jan. 5, 2024).

meeting." (*Id.*, ¶ 43). When the parents of other students in the May 12 meeting contacted Dr. Benway, she informed them of the same and allegedly refused to conduct an investigation. (*Id.*, ¶¶ 48–50). Anthony claims that Dollison "retaliated against ZARIAH by recording on ZARIAH's 'Student Discipline Report' that Niesha Anthony had called to complain to Principal Bickel and Superintendent Benway 'about me being a racist.'" (*Id.*, ¶ 53). Anthony claims that "[t]he Defendants sought to conceal this act of retaliation by failing to inform ZARIAH and/or Niesha Anthony that Vice-Principal Dollison recorded their report of a racist statement made by Vice-Principal Dollison on ZARIAH's disciplinary record, and by failing to afford them notice or an opportunity to rebut, appeal or grieve the patently retaliatory report." (*Id.*, ¶ 60).

On August 19, 2022 (after the 2022 summer break), Zariah reported being bullied and harassed by what Anthony calls the "Gang of Bullies" on the same day. (*Id.*, ¶¶ 66–67). Anthony states that she called OTHS to request a meeting and that her requests were ignored. (*Id.*, ¶ 72). Anthony then states that on September 6, 2022, Zariah physically defended herself in an altercation with the Gang of Bullies. (*Id.*, ¶¶ 78–90). Zariah was initially suspended out-of-school for ten days. (*Id.*, ¶ 94). Following a Disciplinary Hearing on September 12, 2022, Zariah was expelled from OTHS for the remainder of 2022–23 school year. (*Id.*, ¶ 108). Anthony claims that the note in Zariah's Student Discipline Report stating that Anthony accused Dollison of being a racist was explicitly used in support of the expulsion. (*Id.*, ¶¶ 109–10). Anthony alleges that this was in violation of Illinois law and was a disproportionate response. (*Id.*, ¶¶ 114–28).

Anthony initially filed a sixty-six-page Complaint in state court in St. Clair County, Illinois on February 23, 2023. (*See* Doc. 1, Ex. A). This Complaint alleged seventeen separate causes of action against the OTHS Defendants including discrimination and retaliation under Title VI (Counts 1 & 2); discrimination and retaliation under the 2003 Illinois Civil Rights Act (Counts 3, 4, 13 & 14); discrimination and retaliation under 42 U.S.C. § 1983 (Counts 5–12); retaliation at common law (Count 15); violation of substantive due process under 42 U.S.C. § 1983 (Count 16); and permanent and preliminary injunctive relief (Count 17). (*Id.*). The OTHS Defendants removed the case to federal court on March 24, 2023 (Doc. 1) and filed a Motion to Dismiss (Doc. 18) on May 3, 2023. This Court granted the Plaintiffs leave to file an amended complaint (Doc. 24), which was filed on July 31, 2023. (Doc. 26). The pending Motion to Dismiss (Doc. 32) was filed on September 19, 2023, with Anthony responding on October 3, 2023. (Doc. 34). Oral argument was held on November 29, 2023. (*See* Doc. 37).

### APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d

633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Because the instant suit was filed in Illinois and both parties have applied Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012).

## ANALYSIS

The Court will address each of Anthony's claims in turn below. As each claim is brought by either Anthony on behalf of Zariah or in her individual capacity and each is directed against a specific defendant, each section is labeled as such.

## I. Discrimination Under Title VI; Zariah Against the OTHS Board (Count 1)

Anthony's first claim is discrimination pursuant to Title VI of the Civil Rights Act of 1964, 78 Stat. 252, as amended, 42 U.S.C. § 2000d. (*See* Doc. 26, ¶¶ 129–38).

She claims that the OTHS Board "promoted, and/or encouraged an atmosphere and environment of racial hostility by, among other things, failing to investigate, address and remedy reported acts of racial discrimination and retaliation against African American students." (*Id.*, ¶ 134). She also argues that the OTHS Board "discriminated against Zariah and that individuals who had knowledge and a duty to address this discrimination were deliberately indifferent, causing "deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress." (*Id.*, ¶¶ 135–138).

The Defendants argue that Anthony's Amended Complaint "attempts to fashion a claim that the lack of investigation into plaintiffs' complaints during ZA's freshman year at the Milburn freshman campus, where Dollison works, and subsequent discipline of ZA the following school year at the Smiley upperclassmen campus supports a conclusion of discrimination." (Doc. 32, p. 4). They argue that Anthony's arguments that the OTHS Board permitted a "racially hostile environment" are based on conclusory allegations that this statement "caused a substantial detrimental effect on [Zariah's] mental health and interfered with her ability to participate in or benefit from the services, activities and/or privileges provided by OTHS." (*Id.*). They also argue that Anthony has not pleaded sufficient facts to support her claim of Title VI discrimination as Anthony "only pleads conclusions, rather than facts, that the District failed to follow its internal policies because of her race." (*Id.*, p. 5; *see id.*, pp. 6–8). They argue that OTHS cannot be held vicariously liable for Dollison's conduct under *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998). (*See* Doc. 32, p. 5 (citing the same)). The OTHS Defendants

argue that Dollison's conduct does not surpass the bar for deliberate indifference and that Anthony has not sufficiently established that the environment at OTHS was hostile. (*See id.*, pp. 5–7). They also argue that Anthony must indicate which specific programs at OTHS receive federal aid. (*See id.*, p. 8).

Anthony argues in response that "the pleading only needs sufficient facts to raise an inference of discriminatory intent." (Doc. 34, p. 8 (citing *Mojsoski v. Ind. Wesleyan Univ.*, No. 1:22-CV-00019-SLC, 2022 WL 17338426, at *8 (N.D. Ind. Nov. 30, 2022)). Anthony points to *Peck v. W. Aurora Sch. Dist. 129*, No. 06-C-1153, 2006 WL 2579678 (N.D. Ill. Aug. 30, 2006) as an example of more threadbare pleadings that were held to be sufficient. (*See* Doc. 34, p. 8 (citing the same)). She argues that she has pleaded facts regarding the challenged acts taken by the OTHS Board and that specific instances of the Board deviating from established policies and refusing to conduct an investigation into Dollison's conduct. (*See id.*, p. 9–11). She states that departure from established policies is evidence of discriminatory intent in line with *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267 (1977). (*See* Doc. 32, p. 10 (citing the same)). Anthony also argues that, because "the acts pled include being subjected to continued threats of violence and harassment as well as suspension and expulsion from school," this supports her hostile environment claim. (Doc. 34, p. 12). Finally, she argues that she must merely state that OTHS receives federal funding in order to state a claim for discrimination under Title VI. (*See id.*).

Title VI of the Civil Rights Act of 1964 states that "no person shall, 'on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity'" that

is within the penumbra of Title VI. *Alexander v. Sandoval*, 532 U.S. 275, 278 (2001) (quoting the Civil Rights Act of 1964, 78 Stat. 252, as amended, 42 U.S.C. § 2000d). The statute specifically prohibits intentional discrimination. *See id.* at 280 (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 272 (1978)). In order to state a claim for discrimination under Title VI, the plaintiff must allege that "(1) that they have been intentionally discriminated against on the grounds of race; and (2) that defendants are recipients of federal financial assistance." *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834 (N.D. Ill. 2021), *aff'd sub nom. Beaulieu v. Ashford Univ., LLC*, No. 22-1654, 2022 WL 17076691 (7th Cir. Nov. 18, 2022) (quoting *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015)). The complaint must "allege 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014)).

While Dollison's alleged statement certainly does not rise to the level of blatant racial epithets discussed in other cases, *see Atkins v. The Bremerton Sch. Dist.*, No. C04-577RBL, 2005 WL 1356261 at *2 (W.D. Wash. June 7, 2005) (teacher referred to three Black students as "porch monkeys'); *Afogho ex rel. A.A. v. Illinois Cent. Sch. Dist. 104 Bd. of Educ.*, 421 F. Supp. 3d 585 (S.D. Ill. 2019) (teacher repeatedly referred to Black students as his "slaves"), this does not, by itself, render Anthony's claims insufficient. Indeed, at the motion to dismiss stage, the Court provides significant deference to the plaintiff's version of events as, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [during the pleading stage] we 'presum[e] that

general allegations embrace those specific facts that are necessary to support the claim.'" *Afogho* at 592 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Here, Anthony's pleading stating that Dollison made a disparaging remark to Zariah and other students and that OTHS apparently wholly failed to investigate the matter when it was elevated to the principal and superintendent by Anthony and the parents of the other students produces an inference of discriminatory intent, thus meeting the first element of the Title VI discrimination claim. Additionally, Anthony has alleged that OTHS receives federal funding as a public school. This is also sufficient, as caselaw does not indicate that a more detailed exegesis is required at the pleading stage. *See id.* at 593. Both Anthony and the OTHS Defendants will have adequate opportunity to develop their claims during discovery as litigation continues. Thus, this claim survives the OTHS Defendants' Motion to Dismiss.

## II.   Retaliation Under Title VI; Zariah Against the OTHS Board (Count 2)

Anthony next claims that, following her complaints to the OTHS principal and superintendent, the OTHS Defendants "engaged in a pattern of retaliation and harassment." (Doc. 26, ¶ 147). Anthony claims that actions including the disclosure of her identity to Dollison after Anthony called Principal Bickel, failure to take action to investigate the complaints made, using the note in Zariah's Student Discipline Report, suspending and expelling Zariah, and "numerous other acts" constituted retaliation that proximately caused Zariah to suffer "from the deprivation of access to educational benefits, severe humiliation, embarrassment, degradation, mental anguish, and emotional and physical distress." (*Id.*, ¶¶ 147–48).

The OTHS Defendants argue that "the acts she alleges either do not rise to the level of adverse actions as a matter of law or there is no causal connection between her alleged protected activity and the adverse acts." (Doc. 32, p. 8). They argue that "[t]he remaining allegations of retaliatory acts set forth in paragraph 147 of the complaint are conclusory and do not give rise to a reasonable inference of retaliation cognizable under Title VI." (*Id.*, p. 9). They also argue that disclosure of Anthony's identity is not protected (*see id.* (citing *Leiser v. Moore*, 903 F.3d 1137, 1144 (10th Cir. 2018))) and that Zariah's suspension and expulsion some four months after the incident with Dollison demonstrates "insufficient temporal proximity to demonstrate a causal connection." (*Id.*, p. 10 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001))).

Anthony agrees that "[a]t a minimum, Zariah's suspension and expulsion [are] actionable as a matter of law." (Doc. 34, p. 13 (citing *Bhattacharya v. Murray*, 515 F. Supp. 3d 436, 456–57 (W.D. Va. March 31, 2021))). She argues that Principal Bickel's disclosure of Anthony's identity to Vice Principal Dollison and the notation in Zariah's Student Discipline Report that was used in her suspension and expulsion were also adverse actions. (*Id.*). She also argues that Defendants' temporal proximity arguments are misleading due to the fact that summer break separated the incident with Dollison from Zariah's suspension and expulsion. (*Id.*, p. 14).

"To succeed on a claim for retaliation under Title VI, a plaintiff must establish that (1) she engaged in protected activity, (2) her educational institution took an adverse action against her, and (3) a causal connection existed between the protected activity and the adverse action." *Brown v. William Rainey Harper Coll.*, No. 16 C

1071, 2017 WL 3278822, at *5 (N.D. Ill. Aug. 1, 2017) (citing *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)); *Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874, 889–90 (N.D. Ill. 2015); *Su v. E. Ill. Univ.*, 565 Fed. Appx. 520, 521–22 (7th Cir. 2014)). Additionally, "[f]iling an official complaint constitutes protected activity, for which employees of federally-funded programs may not retaliate, as long as the underlying complaint asserts that the plaintiff is suffering discrimination because of the plaintiff's protected class." *Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).

On this issue, the Court also finds that Anthony's pleadings are sufficient. Anthony has shown that Zariah engaged in a protected activity (reporting the incident with Dollison) and has provided factual details on the alleged acts of retaliation which are pleaded to be casually linked. Additionally, because the incident with Dollison and Zariah's expulsion bookended summer vacation, the three-to-four-month proximity benchmark is not directly applicable here. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001). Moreover, while the OTHS Defendants cite *Clark* as the exemplar for the standard timetable for retaliation, *Clark* was an employment discrimination case where an employee was transferred three months after she obtained an Equal Employment Opportunity Commission right-to-sue form. *See Clark*, 532 U.S. at 272–73. Comparing *Clark* to the facts before the Court, the instant circumstances are distinguishable. It may be the case that Anthony is able to prove that Zariah's suspension and expulsion were the *only* adverse actions that fit within the retaliation framework. However, taking Anthony's pleadings as fact for

the purposes of this motion, the Court finds that she has adequately pleaded her Title VI Retaliation claim in Count 2.

## III.  Discrimination Under the 2003 Illinois Civil Rights Act; Zariah Against the OTHS Board (Count 3)

Zariah alleges all the same factual material for her Illinois Civil Rights Act ("ICRA") discrimination claim as she does for her Title VI discrimination claim. (*See* Doc. 26, ¶¶ 30–32). The OTHS Defendants claim that Anthony cannot assert claims under the ICRA in any capacity because she has not adequately pleaded sufficient facts. (*See* Doc. 32, p. 12 (citing *Watkins v. Steiner*, 2013 IL App (5th) 110421-U, at ¶ 17)). They claim that Anthony cannot recover under the ICRA because she has not proven that an official who "has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf has actual knowledge of discrimination . . . and fails to adequately respond." (*Id.*, p. 12 (citing *Watkins* at ¶ 17)). In response, Anthony argues that Dr. Benway had policymaking authority and that "Bickel and Benway, at *minimum*, had actual knowledge of Dollison's discrimination and failed to adequately respond." (Doc. 34, p. 16).

Pursuant to the ICRA, "no unit of state, county, or local government shall 'exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, or national origin'" or "utilize criteria of methods of discrimination that have the effect of subjecting individuals to discrimination because of their race, color, or national origin." *McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, No. 05 C 0760, 2006 WL 6284486 (N.D. Ill. Oct. 3, 2006) (citing 740 Ill. Comp.

Stat. 23/5(a)(1)). "To state a prima facie claim under the statute, plaintiff must allege that defendant 'treated the plaintiffs differently because of their inclusion in an identifiable and constitutionally protected class.'" *Id.* (citing *Raymond S. v. Sperlik*, 2005 WL 3299810, at *5 (N. D. Ill. Nov. 30, 2005)).

As is stated in her claim under Title VI, Zariah is a member of a protected class as a Black person and has alleged discrimination because of her membership in that protected class. Therefore, Anthony has met her burden to bring an ICRA discrimination claim. *See McFadden* at *8 ("Plaintiffs, who are African–American and Hispanic, are entitled to inclusion in a constitutionally protected class based on their race and have alleged discrimination against them based on their race and national origin. Plaintiffs have therefore met their burden of making a prima facie case under this statute."). Moreover, the OTHS Defendants cite the standard from *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998), as discussed by *Watkins*, 2013 IL App (5th), to stand for the proposition that the pleaded facts do not rise to the level of deliberate indifference. (*See* Doc. 32, p. 12). However, as Anthony notes, the OTHS Defendants cite cases decided at the *summary judgment* stage. (*See* Doc. 34, p. 8). Notably, *Gebser* was decided by the trial court at summary judgment, where the standard is much higher than the bar imposed at the pleading stage. Thus, Count 3 of Anthony's Amended Complaint survives the OTHS Defendants' Motion to Dismiss.

## IV.    Retaliation Under the 2003 Illinois Civil Rights Act; Zariah Against the OTHS Board (Count 4)

Zariah relies on the same facts for her ICRA retaliation claim and the OTHS Defendants argue that she has not stated a claim for relief. (*See* Doc. 26, ¶¶ 163–66; Doc. 32, pp. 11–13). The OTHS Defendants argue that violations of internal policies are insufficient to constitute evidence of discrimination or retaliation under the ICRA. (*See* Doc. 32, pp. 12–13). However, the OTHS Defendants cite a variety of cases that discuss a legal duty in a standard negligence claim, not a claim for discrimination or retaliation. *See Yarborough v. City of Springfield*, 2016 IL App (4th) 150336-U (wrongful death claim); *Floyd ex rel. Floyd v. Rockford Park Dist.*, 823 N.E.2d 1004 (Ill. App. 2005) (Local Governmental and Governmental Employees Tort Immunity Act willful and wanton conduct and failure to supervise claims); *Young v. Forgas*, 720 N.E.2d 360 (Ill. App. 1999) (negligence, willful and wanton conduct, and assumption of duty claims).

The ICRA encompasses retaliation claims as well as discrimination claims "even absent an explicit textual reference to 'retaliation'—because retaliation *is* a form of discrimination and enforcement of anti-discrimination statutes would be undermined if it were not interpreted that way." *Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 19 C 03014, 2020 WL 1330654 (N.D. Ill. Mar. 22, 2020) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452-53 (2008); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176-77 (2013); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969), abrogated by *Ziglar v. Abbasi*, 582 U.S. 120 (2017)).

None of the cases cited by the OTHS Defendants discuss violation of internal policies in the ICRA, discrimination, or retaliation context. As the ICRA is analyzed to be coterminous with Title VI, the sufficiency of Anthony's Title VI retaliation pleadings is diagnostic for this claim, as well. The OTHS Defendants' arguments are not dispositive at the motion to dismiss stage. Thus, Anthony's ICRA retaliation claim survives the OTHS Defendants' Motion to Dismiss.

## V.   Discrimination Under 42 U.S.C. § 1983; Zariah Against the Board (Count 5)

Anthony next alleges that the OTHS Board violated Zariah's right to equal protection under the United States Constitution and bring suit under 42 U.S.C. § 1983. (*See* Doc. 26, ¶¶ 167–79). They allege that the OTHS Board had knowledge of their actions and duty to supervise the OTHS staff, that they were deliberately indifferent, acted under color of state law, and proximately caused Zariah's injuries. (*See id.*, ¶¶ 176–79).

The OTHS Defendants counter that vicarious liability is not permitted under § 1983. (Doc. 32, p. 13 (citing *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998))). They argue that cases brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) have "a high bar for liability" and require a standard of "deliberate indifference . . . ris[ing] to the level of criminal recklessness." (*See* Doc. 32, p. 13); *see also Monell*, 436 U.S. 658; *Moore v. Freeport Cmty. Unit Sch. Dist. No. 145*, 570 F. Supp. 3d 601, 612 (N.D. Ill. 2021) (quoting *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)); *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021). They argue that "[w]hile the Board's

official acts could subject it to *Monell* liability, plaintiffs fail to allege any Board act that would state a cause of action for violation of their equal protection or First Amendment rights." (*See* Doc. 32, p. 14). Moreover, they argue that "plaintiffs fail to allege Dollison, Bickel, or Benway acted pursuant to an express policy or widespread custom or practice" and "[e]ven if plaintiffs took the position that the individual defendants or some unknown official had final policymaking authority, dismissal is appropriate because in Illinois, only a school board has final policymaking authority." (*Id.*).

Additionally, specifically regarding the equal protection claim at issue in Count 5, the OTHS Defendants argue that Anthony "ha[s] alleged no facts showing that the Board treated non-African American students more favorably," rather, "plaintiffs add a laundry list of conclusory allegations in their amended complaint." (*Id.*, p. 17). They argue that Anthony "must plead facts showing that the Board singled out African Americans 'for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" (*Id.* (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015); *Moore* at 611)).

In response, Anthony argues "that a school board may delegate authority for various matters to the discretion of subordinates." (Doc. 34, p. 17 (citing *Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993); *Pembaur v. City of Cincinnati*, 574 U.S. 469, 483 (1986))). She argues that, because Principal Bickel and Superintendent Dr. Benway were the designated race discrimination "Complaint Managers" and because Dr. Benway was "vested with the

final decision on Plaintiffs' race discrimination complaint," that she has policymaking authority. (*Id.*). Anthony also argues that the OTHS Defendants exhibited deliberate indifference toward Dollison's statement and that they have sufficiently alleged that Dollison's statement treated Black students differently than white ones. (*Id.*, pp. 17–18, 20). Anthony argues that they "need *not* plead that the Board wanted to cause adverse effects upon Plaintiffs. Instead, Plaintiffs must plead only that the Board *intended to treat them differently* than their white and/or African American counterparts." (*Id.*, p. 21 (emphasis in original)). She also argues that the OTHS Defendants "had a policy and practice of investigating discrimination complaints, yet they departed from that policy and failed and/or refused to investigate Plaintiffs' race complaint against Vice-Principal Dollison." (*Id.*, p. 21).

To levy a claim under 42 U.S.C. § 1983, "a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 638 (1980)). "To state a claim under § 1983 for local governmental liability under *Monell*, a plaintiff must allege that her harm resulted from a constitutional violation and that the local governmental body is responsible for the violation." *Moore*, 570 F. Supp. 3d at 612 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (referring to *Monell*). "Local governmental liability under § 1983 is limited to violations caused by (1) an express policy, (2) a widespread practice so well-settled it becomes a custom, or (3) a person with final policymaking authority for the local governmental body." *Id.* (citing *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). There must be a constitutional violation in order for a school

board to be liable under *Monell. Id.* (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010)). Additionally, to establish liability in a § 1983 equal protection claim, the plaintiff "must show that [the defendant] acted with a nefarious discriminatory purpose and discriminated against her based on her membership in a definable class." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)).

Anthony argues that Dollison's statement that "[a]ll the dark-skinned people are causing all of the problems lately" specifically "did not refer to white peers as 'people causing all of the problems lately'" and that Anthony's complaint of racial discrimination was handled differently than the complaints of white or non-black parents. (Doc. 34, p. 21). She argues that this surmounts the bar to adequately allege a differential in treatment of the protected class versus a non-protected class as discussed in *Doe v. Evergreen Park Elementary Sch. Dist. 124*, No. 17-CV-3774, 2017 WL 6731867 (N.D. Ill. Dec. 29, 2017).

Comparing the instant facts to *Doe*, Anthony is correct that she has stated that Dollison treated non-Black students and their parents differently (albeit in threadbare fashion) and that the OTHS Defendants purportedly did not follow their policies regarding complaints of racial discrimination. Additionally, while the OTHS Defendants argue that the fact that principals do not have policymaking authority is diagnostic, this claim is directed against the OTHS Board, which clearly has final policymaking authority, regardless of any delegation to the superintendent or other officials. (*See* Doc. 32, p. 14 (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch.*

*Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998); *Silverman v. Bd. of Educ. of City of Chi.*, 08 C 2220, 2010 WL 3000187, at *10 (N.D. Ill. July 26, 2010))). Thus, at the motion to dismiss stage, this pleading is sufficient on this Count. For this reason, the Court holds that Count 5 survives the OTHS Defendants' Motion to Dismiss.

## VI.    Retaliation Under 42 U.S.C. § 1983; Zariah Against the Board (Count 6)

Anthony next alleges that the OTHS Board retaliated against Zariah, violating her equal protection rights under the Fourteenth Amendment and her free speech rights under the First Amendment. (*See* Doc. 26, ¶ 191). The OTHS Defendants argue that Zariah's speech was not on a matter of public concern. (*See* Doc. 32, p. 19). They also argue that Anthony "fail[s] to allege any adverse action taken against them that would deter their free speech or that any adverse action was taken because of their complaint about Dollison" and that "[i]t is unclear how the manner in which defendants allegedly ignored plaintiffs' complaints violated their First Amendment rights." (*Id.*, pp. 19–20). They also argue that Anthony has not adequately pleaded an equal protection claim based on race. (*Id.*, p. 21).

In her Response, Anthony argues that the public concern metric applies "only to individuals employed by the government who bring a retaliation claim against the government." (*See* Doc. 34, p. 21 (citing *Connick v. Myers*, 461 U.S. 138, 156–57 (1983)). Moreover, she argues that "[e]ven if Defendants' misapplication of the public concern requirement were valid (and it is not), Plaintiffs [sic] pleading can be plausibly read to involve a matter of public concern" because "race discrimination is a matter of public concern, especially in a public-school context." (*Id.*, p. 24 (citing

*Walker v. Bd. of Regents of Univ. of Wis. System*, 300 F .Supp. 2d 836, 860 (W.D. Wis. 2004); *Afogho*, 421 F. Supp. 3d at 595)). Anthony argues that "the Seventh Circuit has held that the public concern requirement to speech does not extend to private citizens, including private parents that speak out about a public school." (*See* Doc. 34, pp. 23–24 (citing *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *A.J. v. Butler Ill. Sch. Dist. 53*, 2018 WL 1469005, at *8 (N.D. Ill. March 26, 2018))). She also argues that "even an act of retaliation as trivial as failing to hold a birthday party" is protected by the First Amendment and argues that she has plead a variety of retaliatory actions. (*See* Doc. 34, p. 25 (quoting *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990)); *see also id.*, p. 26). Anthony argues that they "are not asserting a general right to be free from retaliation in general," but instead claim "that Defendants retaliated against them because of their race discrimination complaint— a protected activity." (*See* Doc. 34, p. 26 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005))). Anthony cites *McDonnell v. Cisneros*, 84 F.3d 256, 258 (7th Cir. 1996), in which the Seventh Circuit stated that "anger, irritation, dirty looks, even the silent treatment, can cause distress and by doing so discourage complaints; and . . . even rather petty attempts at humiliation, if sufficient to deter the exercise of a right, have been held to be actionable as infringements of rights, for example the right of free speech." (*See id.*, p. 25 (quoting the same)).

First Amendment retaliation claims consist of three elements. "First, [the plaintiff] must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman*

*v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Notably, the "the right to be free from retaliation may be vindicated under the First Amendment or Title VII,[2] but not the equal protection clause." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (citing *Grossbaum v. Indianapolis–Marion Cnty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989); *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997); *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996); *Ratliff v. DeKalb County*, 62 F.3d 338, 340–41 (11th Cir. 1995*); Thompson v. City of Starkville*, 901 F.2d 456, 468 (5th Cir. 1990)).

While Anthony is correct that "retaliation is discrimination . . . because it is an intentional response to the nature of the complaint," the key here is that the retaliation at issue is considered as part of a *discrimination* claim, not as part of a separate *retaliation* claim. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); (*see* Doc. 34, p. 26 (quoting the same)). Thus, Anthony can plead a retaliation claim under Title VI (*see supra*) or under the First Amendment (as here), but not under the Fourteenth Amendment's Equal Protection Clause, which does not create a *separate* cause of action for retaliation. *See Boyd* at 898 (citations omitted).

---

[2] "Title VI case law has traditionally borrowed jurisprudence from other civil rights laws with a similar structure and purpose." U.S. Dep't of Just., C.R. Div., Title VI Legal Manual § VI, at 6 n.8; *see also id.* (collecting cases) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) ("[Title VI] is parallel to Title IX . . . . The two statutes operate in the same manner . . . ."); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 346 (11th Cir. 2012) ("Title IX, like the [Rehabilitation Act] was modeled after Title VI, and the text of all three acts [is] virtually identical . . . ."); *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 519 (9th Cir. 2011) (looking to Title VII jurisprudence to analyze Title VI claims)).

Regarding her First Amendment retaliation claim, Anthony has pleaded that her speech in the form of her complaints was a protected First Amendment activity (whether it was a matter of public concern or not as a private citizen) and that retaliatory actions were taken by the OTHS Defendants that are alleged to have been related to the protected speech. Therefore, this claim also survives the pending Motion to Dismiss as related to the First Amendment. However, the equal protection relation claim brought under the Equal Protection Clause is dismissed for failure to state a claim.

## VII.   Discrimination and Retaliation Under 42 U.S.C. § 1983; Zariah Against Twana Dollison, Rich Bickel, and Dr. Darcy Benway (Counts 7–10)

In the next four Counts, Anthony bring suit on behalf of Zariah against specific individuals in the OTHS school district under § 1983. The first two of these claims are discrimination and retaliation claims directed against Vice Principal Dollison. (*See* Doc. 26, ¶¶ 195–206; 207–22). The third is a retaliation claim directed against Principal Rich Bickel (*see id.*, ¶¶ 223–235) and the fourth is a retaliation claim directed against Dr. Darcy Benway (*see id.*, ¶¶ 236–248). Count 7 is an equal protection claim. (*See id.*, ¶ 196). Counts 8–10 are brought to protect Zariah's equal protection and "free speech rights." (*See id.*, ¶¶ 208, 224, 237).

The OTHS Defendants argue that all of the individual defendants are entitled to qualified immunity. (*See* Doc. 32, pp. 21–22 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.")). They argue that it is the Plaintiffs' burden to show the official's violation of a clearly established right. (*See id.*, p. 22 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *al-Kidd* at 741) (internal quotation marks omitted). "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.*

Anthony argues that qualified immunity is not applicable where intentional discrimination is alleged. (*See* Doc. 34, p. 27 (citing *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 835 (7th Cir. 2015); *Resendez v. Prance*, No. 3:16-CV-862 JD, 2018 WL 1531788, at *4 (N.D. Ind. Mar. 29, 2018))). She argues that Dollison intentionally discriminated and retaliated against Zariah, that Bickel failed to investigate after he told Dollison about the complaint, and the Dr. Benway either failed to respond or refused to respond to Niesha's complaints of race discrimination. (*See id.*, p. 28–19). Moreover, Anthony claims that Dr. Benway "summarily informed Niesha that Dollison could not have made a racist statement" and that "[s]uch action is inexcusable under the law."[3] (*Id.*, pp. 28–29).

---

[3] Of note is that the Equal Employment Opportunity Commission's guidance is unclear about the contours of same-race discrimination, which is pertinent here because Dollison is also Black. *See Race/Color Discrimination – FAQs*, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMM'N, https://www.eeoc.gov/youth/racecolor-discrimination-faqs [https://perma.cc/AEL2-HCW2] (last visited Jan. 23, 2024) ("Is it illegal to discriminate against or harass someone of your own race? Yes. It is illegal for people to discriminate against people of their own racial group on the basis of race or color. For example, a light-skinned Black male may not harass another Black male who has darker skin.").

The Supreme Court has stated that "qualified immunity questions should be resolved at the earliest possible stage of a litigation" because "[o]ne of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow* at 817–18).[4] However, the Seventh Circuit has said more recently that "we have cautioned that the rule that qualified immunity must be resolved at the earliest possible stage . . . must be tempered by the notice pleading requirements of Rule 8." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) (citing *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001)). Thus, "the pleading standard is no different simply because qualified immunity may be raised as an affirmative defense." *Id.* (citing *Crawford–El v. Britton*, 523 U.S. 574, 595 (1998)). Additionally, as *Tamayo* discusses as related to sex discrimination,[5] there is a clearly established right to be free from race-based discrimination. *See id.* at 1090–91 ("In any event, the right to be free from sex discrimination is clearly established. Taking all facts pleaded in Ms. Tamayo's complaint as true, the defendants violated a clearly established constitutional right; therefore, a grant of qualified immunity is inappropriate at this point in the proceedings.").

---

[4] While the Defendants rely on *Anderson*, it was decided prior to the implementation of the notice pleading standing in *Twombly* and *Iqbal*.

[5] *See supra* note 2.

Here, as in *Tamayo*, Anthony has pleaded facts indicating that the OTHS Defendants violated Zariah's right to be free from race-based discrimination and retaliation. Further factual development is not required at the pleading stage. With this in mind, the OTHS Defendants' arguments on qualified immunity are not availing at this stage in litigation. The equal protection discrimination claim in Count 7 thus survives the Motion to Dismiss. Moreover, although Anthony lists the Counts 8–10 as being for "retaliation" under the Equal Protection Clause and the First Amendment, as stated *supra*, the Equal Protection Clause does not create a right to be free from retaliation except as a form of discrimination (i.e., the Equal Protection Clause does not create a *separate* cause of action for retaliation). As she is able to bring these claims as part of an equal protection discrimination claim and as a First Amendment claim, the Court reads these claims as such. With this in mind, Counts 7, 8, 9, and 10 survive the OTHS Defendants' Motion to Dismiss.

## VIII.  Discrimination and Retaliation Under 42 U.S.C. § 1983; Niesha Against the OTHS Board (Counts 11 & 12)

Niesha Anthony also brings the same § 1983 equal protection discrimination claim (Count 11) and equal protection and free speech retaliation claim (Count 12) against the OTHS Board in her individual capacity as she does on Zariah's behalf in Counts 5 and 6. (*See* Doc. 26, ¶¶ 249–78). The OTHS Defendants argue that Anthony does not have standing to bring these claims because she "fail[ed] to allege any unconstitutional conduct on the part of the Board that directly affected her." (*See* Doc. 32, p. 15).

Anthony argues first that she "pled offense to the discriminatory remark made by Defendant Dollison to her daughter and Defendants' intentional failure to comply with policies and procedures to redress the racially discriminatory statement" and argues that "parents have standing to challenge constitutional violations involving their child if the parents are directly affected by the government action." (Doc. 34, p. 18 (citing *Fleischfresser v. Dir of Sch. Dist. 200*, 15 F.3d 680, 683 (7th Cir. 1994); *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985), *overruled by Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir.), *cert. denied*, 144 S. Ct. 88 (2023); *Dipippa v. Union Sch. Dist.*, 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011))). She also argues that Zariah's expulsion "has caused her significant damages, including the costs, emotional trauma and effort needed to overcome various burdens and obstacles that have resulted, including but not limited to finding alternative education for Zariah and providing family assistance in monitoring Zariah's education from home needed to accomplish the alternative education." (*Id.*, p. 19).

To establish standing, a plaintiff must demonstrate that he or she "suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)). That being said, standing for parents to sue in an individual capacity in § 1983 suits is limited. The Defendants point to *Fleischfresser* as standing for the proposition that parents only have standing to sue on their own behalf "for constitutional violations involving their

children at school only if the violation directly affects the parents." (Doc. 32, p. 15 (citing *Fleischfresser* at 683)).

*Fleischfresser* involved parents bringing Establishment and Free Exercise Clause claims relating to the supplemental reading program at their child's public school. *See id.* at 683–84. The other cases cited by Anthony on this point are not from the Seventh Circuit. *See Kelson* (Ninth Circuit); *Dipippa* (Third Circuit). Free Exercise and Establishment Clause claims are not comparable to the instant matter. In fact, in *Dipippa*, the District Court stated that the Third Circuit expressly declined to extend parents' standing in § 1983 claims beyond recovery of damages for a child's medical expenses proximately caused by the constitutional violation. *See id.* at 446 ("Defendants note that a parent's ability to recover damages with their own independently pled section 1983 claim stemming from constitutional deprivations suffered by minor children is limited to those situations involving the death of a child or the termination of parental rights. The Third Circuit has cautioned against extending the right to recover beyond those parameters and that such a right has not been extended to a parent whose child had been molested by a public school employee as the facts were pled here." (citations omitted)). While Anthony has pleaded that she has incurred expenses due to Zariah's suspension and expulsion, she has not stated that the damages were medical expenses that were proximately related to the school board's conduct. (*See* Doc. 34, p. 10 (stating that damages included "the costs, emotional trauma and effort needed to overcome various burdens and obstacles that have resulted, including but not limited to finding alternative education for Zariah

and providing family assistance in monitoring Zariah's education from home needed to accomplish the alternative education")).

Anthony also argues that the "Defendants directly interfered with [her] right to direct her daughter's education." (*Id.*). While parents do have a right to direct their child's education, *see Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children . . . ." (citations omitted)), the Seventh Circuit has stated that "a right to choose the type of school one's child attends, or to direct the *private* instruction of one's child, does not imply a parent's right to control every aspect of her child's education at a public school." *Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 F. App'x 50, 53–54 (7th Cir. 2007). Thus, Anthony has not articulated how she can bring § 1983 equal protection discrimination and First Amendment lawsuits in her *individual* capacity based on the narrow avenue for claims possible in parental § 1983 suits. She has already brought nearly identical claims on behalf of Zariah in Counts 5 and 6. Thus, for these reasons, Counts 11 and 12 of the First Amended Complaint must be dismissed as duplicative and for lack of standing.

## IX. Discrimination and Retaliation Under the 2003 Illinois Civil Rights Act; Niesha Against the OTHS Board (Counts 13 & 14)

While Counts 3 and 4 are brought by Niesha Anthony as next friend to her minor daughter, she also brings claims for ICRA discrimination and retaliation on her own behalf. (*See* Doc. 26, ¶¶ 279–305). The OTHS Defendants argue that, because parents do not have standing to sue a school board under Title VI, Anthony does not have standing to bring suit under the ICRA. (*See* Doc. 32, p. 12 (citing *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330 (2016); *Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. of Educ.*, No. 04 C 8250, 2005 WL 910732 (N.D. Ill. Apr. 13, 2005))). Anthony insists that she has suffered "significant tangible damages . . . that can be remedied by the federal court." (Doc. 34, p. 19).

Because the "ICRA was patterned on Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which prohibits race and national origin discrimination in federally assisted programs," the "Illinois courts 'look to cases concerning alleged violations of federal civil rights statutes to guide our interpretation of the Act.'" *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889 (N.D. Ill. 2015) (quoting *Cent. Austin Neighborhood Ass'n v. City of Chicago*, 1 N.E.3d 976) (citing *Dunnet Bay Constr. Co. v. Hannig*, No. 10–3051, 2014 WL 552213, at *24 (C. D. Ill. Feb. 12, 2014). Notably, "[s]ection 5 of the Illinois Civil Rights Act of 2003 . . . was not intended to create new rights but was instead enacted to establish a state law remedy for discrimination that was covered by Title VI." *Dunnet Bay Construction Co.* at *24 (citing *Ill. Native Am. Bar Ass'n v. Univ. of Ill.*, 368 Ill. App. 3d 321, 327 (2006)).

With this in mind, if Anthony does not have standing to sue under Title VI, she does not have standing to sue under the ICRA. The only case on point is from a District Court in the Fifth Circuit that ruled that parents do not have standing to sue under Title VI because parents are not the intended recipients of the federal funding provided to public schools. *See Woodridge Elementary* at *2 (citing *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S. D. Tex. 1996)). As Anthony is not a student or participant in any OTHS activities that would render her a recipient of the federal funding allocated to OTHS, she cannot bring ICRA discrimination or

retaliation claims in her individual capacity. That being said, she may bring suit on behalf of her minor child (which she has); her claims brought in an individual capacity are duplicative. Therefore, Counts 13 and 14 must be dismissed for lack of standing.

## X.    Retaliation at Common Law; Zariah and Niesha Against the OTHS Board (Count 15)

Anthony next brings a retaliation claim under Illinois common law and the Illinois Bullying Prevention Statute, 105 Ill. Comp. Stat. 5/27-23.7. (*See* Doc. 26, ¶¶ 306–14). She argues that the OHTS Board is liable under this statute and under common law for failing to prevent Zariah from being bullied and failing to preserve a non-hostile school environment. (*See id.*, ¶ 312).

The OTHS Defendants argue that this is not a "recognized cause of action in Illinois." (*See* Doc. 32, p. 25). They argue that "courts have only allowed such retaliation claims in the context of employees who are terminated in violation of a recognized public policy in Illinois." (*Id.*, citing *Carpenter v. ConocoPhillips Co.*, Case No. 13-cv-0655-MJR-SCW, 2014 WIL 3401990, at *2 (S.D. Ill. July 11, 2014); *Bennett v. Cmty. & Econ. Dev. Assoc. of Cook Cnty., Inc.*, Case No. 13 C 8341, 2014 WL 3811051, at *2 (N.D. Ill. Aug. 1, 2014))). They also argue that the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-109 [hereinafter "ITIA"], renders public officials not liable "for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Doc. 32, p. 25 (citing 745 Ill. Comp. Stat. 10/2-201)). They offer *Mulvey v. Carl Sandburg High Sch.*, 66 N.E.2d 507 (2016) for this proposition—in this case, the appellate court agreed with the trial court that the

district's "bullying policy provides that preventing bullying was a goal, not a promise" and that the school officials were entitled to immunity. (*See* Doc. 32, p.25 (citing *Mulvey* at ¶¶ 32, 52)).

In response, Anthony argues that "without the benefit of discovery, the Court cannot definitively conclude Defendants' alleged acts or omissions were categorically discretionary policy determinations to qualify for immunity under [the ITIA]." (Doc. 34, p. 30 (*citing Black ex rel. J.D. v. Littlejohn*, 2020 WL 469303, at *9 (N.D. Ill. Jan. 28, 2020))). She offers the analysis of the court in *Black* as determinative; the District Court found that, even though "the Board had an Anti-Bullying policy but took little or no action to protect plaintiff, and the mandated reporters did not report the bullying to the Department of Child and Family Services . . . [,] these facts [were] insufficient to definitively determine whether defendants' alleged acts or omissions were categorically discretionary policy determinations." (*Id.* (citing *Black* at *2, *9)).

While Anthony claims that the ruling in *Black* is diagnostic, the defendants in that case attempted to use the ITIA to bar intentional infliction of emotional distress and wanton supervision claims. *Black* at *9. The District Court denied the motion to dismiss these claims because while "Defendants argue that courts have routinely dismissed complaints at the motion to dismiss stage, . . . the cases Defendants cite did not apply the same provisions of the ITIA." *Id.* Notably, "immunity under the Act is an affirmative defense . . . and the Seventh Circuit has repeatedly cautioned that courts should generally refrain from granting motions to dismiss under Rule 12(b)(6) based on affirmative defenses." *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-CV-11-MAB, 2023 WL 348320 (S.D. Ill. Jan. 20, 2023) (citing *Van Meter v.*

*Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003)); *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). Since the factual allegations are not "unambiguous" here, while the OTHS Defendants can offer the ITIA as an affirmative defense, the court declines to dismiss Anthony's claim based on the same.

However, while Anthony offers one case to support her assertion of a common law retaliation claim as related to school expulsion, the case cited deals with retaliatory discharge, not with expulsion. *See Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1140 (2000). Thus, the OTHS Defendants are correct that Anthony has not adequately pleaded a cause of action under the Illinois Bullying Prevention Act. (*See* Doc. 26, ¶ 314 (quoting 105 Ill. Comp. Stat. 5/27-23.7(a))). For this reason, Count 15 must be dismissed.

## XI.   Violation of Substantive Due Process Under 42 U.S.C. § 1983; Zariah Against the OTHS Board (Count 16)

Anthony next claims that the OTHS Board's actions violated Zariah's rights to substantive due process under the United States Constitution. (*See id.*, ¶¶ 315–19). The OTHS Defendants argue that this claim does not meet the high bar for substantive due process, namely, that the government's conduct "'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" (Doc. 32, pp. 26–27 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Brown v. Plainfield Cmty. Consol. Dist. 202*, 522 F. Supp. 2d 1068, 1076 (N.D. Ill. 2007))). They also argue that a race discrimination claim should have been brought

under the Fourteenth Amendment's Equal Protection Clause, not under a due process framework. (*See id.*, p. 27 (citing *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194-195, 123 S.Ct. 1389 (2003); *Villaage Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–61 (1977))).

Anthony argues that "Zariah's substantive due process claim is one of those 'rare cases' where there is 'no rational relationship between the punishment and the offense.'" (Doc. 34, p. 32 (citing *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir. 1985))). She insists that there was no reasonable basis for the actions taken by the OTHS Board, including the failure to investigate Dollison, the annotation in Zariah's Student Discipline Report, the failure to stop the bullying of Zariah, and Zariah's expulsion. (*See id.*, p. 32). Anthony argues that "without this Court's review an innocent student is unjustifiably reprimanded for actions she did not commit" and that "[t]his is a case where the victim of repeated and nearly constant bullying was subjected to an unprovoked attack by a Gang of Bullies and was punished." (*Id.*).

In *Brown*, a student was expelled for "a serious infraction: the unwanted touching of a teacher's intimate body part." *Brown*, 522 F. Supp. 2d at 1078. The District Court ruled that "[e]ven if Plaintiff is correct that the school board could have imposed a lesser sentence, the school board's conduct, as alleged in the Amended Complaint, falls far short of shocking the conscience." *Id.* The OTHS Defendants claim that Zariah "was involved in one of the most outrageous fist fights ever to occur at OTHS" and, "[a]s a result of that fight, which was captured on video, ZA and the other combatant were suspended and ultimately disciplined by the Board." (Doc. 32, p. 2). As in *Brown*, disciplining the students involved in an "outrageous" physical fight

for which there was video evidence fits within a school district's goals to maintain a "safe learning environment for both students and teachers." *Brown* at 1078; *see id.* ("Imposing a harsh penalty for such an offense could reasonably be viewed as necessary to deter student misconduct and ensure a safe learning environment for both students and teachers."). Here, the OTHS Board, even if imposing a harsh penalty, had reasons to do so. Additionally, the penalty here (expulsion for the 2022– 23 school year) does not rise to the level of "shocking the conscience" as is required for a substantive due process claim. Thus, Anthony cannot meet the necessary bar to establish a substantive due process claim and Count 16 must be dismissed.

## XII.   Preliminary and Permanent Injunctive Relief; Zariah and Niesha Against to OTHS Board (Count 17)

Anthony's final claim is for preliminary and permanent injunctive relief against the OTHS Board; she seeks to enjoin the OTHS Board from enforcing Zariah's expulsion and to have the records of Zariah's suspension and expulsion expunged. (*See* Doc. 26, pp. 70–72[6]). The OTHS Defendants argue that Anthony has not met her burden for injunctive relief and that the OTHS Board cannot be enjoined from enforcing an expulsion the term of which has already been completed. (*See* Doc. 32, pp. 28–30). Anthony argues that she has met all four factors in the Seventh Circuit's required analysis. (*See* Doc. 34, pp. 33–35). While Anthony has included injunctive relief as a claim in their First Amended Complaint, they have not filed a separate motion for preliminary injunction.

---

[6] Paragraphs 325–27 are erroneously mislabeled in Anthony's First Amended Complaint. (*See* Doc. 26, pp. 70–72). The Court therefore refers to the page numbers on which those paragraphs appear.

The standard for pleadings and the standard for a preliminary injunction are thus far different. While a complaint must only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), the burden for preliminary injunctions is considerably higher. A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Finch v. Treto*, 82 F.4th 572, 578 (7th Cir. 2023) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021)). The purpose of a preliminary injunction is "preserve the relative positions of the parties until a trial on the merits can be held." *Tully v. Okeson*, 78 F.4th 377, 381 (7th Cir. 2023) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). The issuance of a preliminary injunction should also "minimize the hardship to the parties pending final judgment." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988).

Crucially, "[t]he party seeking a preliminary injunction bears the burden of showing that it is warranted." *Finch*, 82 F.4th at 578 (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). In the Seventh Circuit, "a district court engages in an analysis that proceeds in two distinct phases to decide whether such relief is warranted: a threshold phase and a balancing phase." *Valencia v. City of Springfield,* 883 F.3d 959, 965 (7th Cir. 2018). In order to proceed beyond the "threshold phase," the party seeking a preliminary injunction must satisfy three requirements via a showing that: "(1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH Indianapolis,*

*LLC v. Consol. City of Indianapolis & Cnty of Marion*, 889 F.3d 432, 437 (7th Cir. 2018); *see also Finch* at 578 (citing *Speech First*, 968 F.3d at 637); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

Additionally, "[i]f it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms." *Valencia*, 883 F.3d at 966 (quoting *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993)). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Moreover, regarding the likelihood of success on the merits, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting and disapproving *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)); *see also Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020) ("[A]n applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case. A 'strong' showing thus does not mean proof by a preponderance—once again, that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending. But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case.").

If the threshold requirements are met, "the court must balance the equities, weighing the harm to the moving party if the requested injunction is denied against the harm to the nonmoving party and the public—including third parties—if it is granted." *Finch* at 578 (citing *Cassell*, 990 F.3d at 545). In the second phase, "the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023). This is accomplished via "a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Id.* (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). The court must also consider the public interest. *Id.*

Thus far, Anthony's arguments are based on proving that her First Amended Complaint survives the OTHS Defendants' Motion to Dismiss, for which her burden is much lower than the burden to prove that a preliminary injunction is warranted. While her Response (Doc. 34) cursorily discusses the required factors, she has not met her burden to prove that a preliminary injunction is warranted here, especially as the 2022–23 school year has already been completed. Therefore, Anthony's prayer for relief that the OTHS Board be enjoined from enforcing the expulsion is moot. Additionally, the parties did not have definitive answers at Oral Argument as to whether Zariah was able or willing to return to OTHS for the 2023–24 school year. (*See* Doc. 37). As the Court discussed at Oral Argument, there is a concern that the suspension and expulsion on Zariah's academic record could have significant consequences for her when she submits college applications. (*Id.*). As Zariah is in the midst of her junior year of high school, it is unlikely that she will be applying to college

until late fall or winter 2024. If Anthony seeks a preliminary injunction, she must submit a separate motion arguing her case to the required standard. She can seek a permanent injunction via continued litigation on this matter. However, as her pleadings for Count 17 must be amended, Count 17 of the First Amended Complaint must be dismissed.

### CONCLUSION

For the reasons set forth above, the O'Fallon Township High School Defendants' Motion to Dismiss (Doc. 32) is **GRANTED in part and DENIED in part**. Counts 6, 15, 16, and 17 of Plaintiff Niesha Anthony's First Amended Complaint (Doc. 26) are **DISMISSED without prejudice** except as to the First Amendment retaliation claim in Count 6. Counts 11, 12, 13, and 14 are **DISMISSED with prejudice** for lack of standing. Anthony may file a second amended complaint on or before February 22, 2024 based on the parameters of this Order or she may file a motion for leave to amend.

**IT IS SO ORDERED.**

**DATED:  January 23, 2024**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**